# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

George B. Thomas, : 
                         Petitioner : 
                                    : 
               v. :   No. 899 C.D. 2022
                                    :   Submitted: April 6, 2023
Sysco Foods (Workers' : 
Compensation Appeal Board), : 
                       Respondent : 


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge[1]
              HONORABLE ANNE E. COVEY, Judge
              HONORABLE STACY WALLACE, Judge

## OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**PRESIDENT JUDGE COHN JUBELIRER**        **FILED: April 26, 2024**

George B. Thomas (Claimant) petitions for review of an Order of the Workers' Compensation Appeal Board (Board), affirming a Decision of a Workers' Compensation Judge (WCJ), that granted a Termination Petition filed by Sysco Foods (Employer). Claimant argues Employer should be barred from utilizing an independent medical examination (IME) of Claimant because Employer did not notify Claimant's workers' compensation (WC) counsel in advance of the requested IME. Alternatively, Claimant argues the IME physician's opinion was equivocal, and, therefore, the Termination Petition should have been denied. Upon review, we affirm.

---

[1] This matter was reassigned to the author on February 13, 2024.

## I.    BACKGROUND

On July 1, 2016, Claimant suffered a work injury, which, by stipulation of the parties, was described as a lower left leg amputation and an adjustment disorder with mixed anxiety and depressed mood. A WCJ approved the stipulation by decision dated September 17, 2018. On April 28, 2020, Employer filed the Termination Petition, asserting Claimant fully recovered from any psychological injuries as of February 10, 2020, the date of Gladys Fenichel, M.D.'s most recent IME. (Reproduced Record (R.R.) at 6a.) Claimant filed an answer denying the same. (*Id.* at 8a.) Proceedings were held before a WCJ. At a May 14, 2020 telephonic hearing,[2] Employer moved for admission of Dr. Fenichel's IME report, to which Claimant objected. (*Id.* at 98a-100a.) One basis for Claimant's objection was the lack of notice to Claimant's WC counsel of the IME. (*Id.* at 101a.) Claimant's WC counsel explained he was surprised when he received Dr. Fenichel's report, originally thinking it was based on one of her prior examinations, only to discover it was a new IME. (*Id.*) Given the lack of notice to Claimant's WC counsel, Claimant sought to exclude the use of any evidence from Dr. Fenichel. (*Id.* at 101a-03a.) Employer's counsel responded that they were also unaware of the IME notice, which was sent by a third-party vendor, until Dr. Fenichel's report was received. (*Id.* at 104a.) Employer's counsel acknowledged counsel in the WC matter was not copied; rather, counsel in third-party litigation was. (*Id.*) Counsel for Employer argued Claimant was not prejudiced as he did receive notice and went to the IME, and Claimant could have asked his attorney about the notice and IME if he had questions. (*Id.* at 105a.)

---

[2] The May 14, 2020 telephonic hearing involved both the instant Termination Petition, as well as a modification petition filed by Employer, which is the subject of a separate appeal before this Court at docket number 1414 C.D. 2021.

2

The WCJ offered Claimant's WC counsel two options: (1) to reschedule the IME with Dr. Fenichel and proceed under a new petition to terminate, or (2) since counsel received the report, proceed with the litigation of the existing Termination Petition. (*Id.* at 105a-06a.) Claimant's WC counsel responded he would have objected to the IME had he been aware in advance, and that the issuance of the report two months later prevented him from having his expert, Kenneth Weiss, M.D., review it and respond. (*Id.* at 106a-07a.) Claimant's WC counsel also denied that Claimant's counsel in the third-party litigation received notice of the IME, despite being allegedly copied on the notice. (*Id.* at 108a.) The WCJ explained that because the Termination Petition is a new proceeding, separate from the litigation of a modification petition, the record of which was closed earlier in the hearing, he was going to have Employer "move forward with Dr. Fenichel's deposition testimony and [Claimant would] have plenty of time to talk to Dr. Weiss and have him discuss Dr. Fenichel's opinions of full recovery." (*Id.* at 108a-09a.) The WCJ continued:

> I do know that the IME in the [modification petition] litigation that served as support for the doctor's deposition was done in February of 2019.
>
> The new IME was done a year later.
>
> So had you objected to it, more than likely I would have overruled your objection and permitted the IME to go forward anyhow.

(*Id.* at 109a.)

Claimant's WC counsel responded he understood the WCJ's rulings, and he preserved his objections for the record. (*Id.* at 110a.) The WCJ then explained: "[L]et's assume that I would say that the IME was not proper and needed to be rescheduled. You would get notice of a new IME and we would be back here again,"

which Claimant's WC counsel confirmed was correct. (*Id.* at 110a-11a.) Accordingly, the WCJ explained:

> So let's move forward just to get some – I'm going to give you plenty of time. You'll have an opportunity to talk to your client about the content of the IME since you were not present or notified about the IME.
>
> So what I'm going to do is I'm going to order that [Employer] must move forward with the deposition of Dr. Fenichel within 120 days.
>
> . . . [T]hat should give you enough time to talk to your client in that period of time, send the report to Dr. Weiss and get whatever opinions you want from Dr. Weiss.
>
> And then you will have 90 days after the date of the next hearing, which will be scheduled in 120 days. [You] will have 90 days after that date to complete any psychiatric evidence on behalf of [] Claimant.

(*Id.* at 111a.)

At the next scheduled hearing on December 11, 2020, Employer moved for admission of Dr. Fenichel's deposition transcript and related exhibits, to which Claimant did not object. (*Id.* at 120a-21a.) Therein, Dr. Fenichel, a board-certified psychiatrist, testified as follows.[3] Dr. Fenichel previously conducted her first examination of Claimant in January 2018, at which time she opined Claimant could return to work from a psychiatric perspective. (WCJ Decision, Finding of Fact (FOF) ¶ 1(b).) Dr. Fenichel performed a second evaluation of Claimant approximately one year later, and her opinion remained unchanged. (*Id.* ¶ 1(c).) Dr. Fenichel performed a third evaluation, which is the basis for Employer's Termination Petition, on February 10, 2020.[4] (*Id.* ¶ 1(f).) Dr. Fenichel noted normal

---

[3] Dr. Fenichel's deposition testimony can be found in the Reproduced Record at 260a through 329a and is summarized by the WCJ in Finding of Fact 1.

[4] The WCJ's Decision appears to contain a typographical error as Dr. Fenichel testified it occurred on February 10, 2020, not January 10, 2020. (R.R. at 269a-70a.)

4

mental status findings during her examination. (*Id.* ¶ 1(o)-(p).) She opined Claimant fully recovered from the adjustment disorder with mixed anxiety and depressed mood and imposed no restrictions from a psychiatric perspective. (*Id.* ¶ 1(q).) Nor did Dr. Fenichel believe Claimant required further psychiatric or psychological treatment. (*Id.*) Following her examination of Claimant, Dr. Fenichel reviewed a report from Dr. Barbara Watson dated February 20, 2020. (*Id.* ¶ 1(r).) Dr. Watson's report indicated Claimant resumed treatment secondary to a decline in mood and behavior and Claimant presented with euthymic mood and full affective range. (*Id.* ¶ 1(g).) Claimant had not treated with Dr. Watson since March 5, 2020. (*Id.* ¶ 1(f), (h).) Claimant's March 19, 2020 appointment with Dr. Watson was canceled due to the pandemic; telehealth network appointments were available and offered to Claimant during the pandemic, but Claimant did not attend such appointments. (*Id.* ¶ 1(f), (h)-(j).)

Dr. Weiss, a board-certified forensic psychiatrist, testified as follows.[5] Dr. Weiss evaluated Claimant a second time at the request of Claimant's counsel in December 2020. (*Id.* ¶ 2(b), (o).) Claimant had no signs of physical or mental distress but, according to Dr. Weiss, Claimant's emotional expression was restricted, which Dr. Weiss testified was consistent with depression. (*Id.* ¶ 2(c).) Claimant admitted to not following through with psychotherapy or other rehabilitative activities, the importance of which Dr. Weiss explained. (*Id.* ¶ 2(c), (o).) Claimant acknowledged he had not been seeing Dr. Watson regularly and had not returned to Dr. Watson "for a while." (*Id.* ¶ 2(e).) Claimant told Dr. Weiss he is apprehensive as to how others view him due to his prosthesis and became a "recluse" since the pandemic. (*Id.* ¶ 2(d)-(e).) Claimant told Dr. Weiss he is constantly sad and

---

[5] Dr. Weiss's deposition testimony can be found in the Reproduced Record at 176a through 226a and is summarized by the WCJ in Finding of Fact 2.

5

reminded of the incident and injury. (*Id.* ¶ 2(g).) In Dr. Weiss's opinion, Claimant's depressed mood increased since his first examination of Claimant in 2018 and his post-traumatic symptoms decreased. (*Id.* ¶ 2(h).) Dr. Weiss's diagnosis was "Dysthymic Disorder (chronic depression) along with mild residuals of post-traumatic stress disorder." (*Id.* ¶ 2(j), (n).) Dr. Weiss believed Claimant should continue with psychotherapy and possibly antidepressant medicines. (*Id.* ¶ 2(*l*), (o).) Dr. Weiss disagreed with Dr. Fenichel about Claimant having no psychiatric disability. (*Id.* ¶ 2(j).) Dr. Weiss believed returning to Employer would create anxiety, and Claimant's self-consciousness, avoidant behavior, and poor self-esteem renders him "unable to perform the requisite functions to work productively" in a vocational setting. (*Id.* ¶ 2(f), (k)-(*l*).) The WCJ noted Dr. Weiss previously opined that it would be beneficial for Claimant to return to work, which is inconsistent with Dr. Weiss's testimony now. (*Id.* ¶ 2(k).) The WCJ also noted that both times Dr. Weiss evaluated Claimant was at his counsel's request. (*Id.* ¶ 2(m).)

Claimant testified as follows.[6] Claimant appeared for an examination before Dr. Fenichel at which he complained of severe depression, anxiety, and feeling downtrodden, sad, and unhappy. (*Id.* ¶ 3(a).) Claimant told Dr. Fenichel he has neither adjusted to the injury nor accepted he had been injured. (*Id.* ¶ 3(b).) He did not recall whether Dr. Fenichel inquired about having flashbacks, nightmares, or dreams, but he would have responded he does experience flashbacks. (*Id.* ¶ 3(c).) He also dreams about being able to run and having full athletic ability of all his limbs and constantly thinks about being "normal" again. (*Id.* ¶ 3(e), (g).) He is uncomfortable speaking about the workplace accident. (*Id.* ¶ 3(d).) Claimant told Dr. Fenichel "he cut himself off from friends and family," as well as his attorneys,

---

[6] Claimant's testimony can be found in the Reproduced Record at 131a through 153a and is summarized by the WCJ in Finding of Fact 3.

6

resulting in his mother intervening. (*Id.* ¶ 3(f).) He described his depression as "crippling." (*Id.* ¶ 3(h).) He had sought help from Dr. Watson in February 2020 but stopped in March 2020 because of his worsening depression. (*Id.* ¶ 3(i).) In August 2020, Claimant saw Dr. Watson again. (*Id.* ¶ 3(j).) Despite the availability of telehealth visits, Claimant did not schedule any further appointments with Dr. Watson until January 2021, attributing the same to his depression and avoidant behavior. (*Id.* ¶ 3(i)-(j).) Since January 2021, Claimant has seen Dr. Watson weekly and was referred to a psychiatrist for antidepressants. (*Id.* ¶ 3(k).) A week before the March 2021 hearing, Claimant tried to schedule a psychiatry appointment. (*Id.* ¶ 3(*l*).) Although Claimant's symptoms continue, he believes Dr. Watson is helping him overcome his depression, though he does not believe he could return to work at Employer given his flashbacks and anxiety. (*Id.* ¶ 3(j)-(*l*).[7])

The WCJ rejected Claimant's testimony as to ongoing disability. (*Id.* ¶ 4.) In doing so, the WCJ explained, "Claimant's credibility is impacted negatively by infrequent psychological treatment visits," specifically noting the complete lack of treatment for a period of 11 months and the proximity of his resuming treatment to his IME with Dr. Fenichel. (*Id.* ¶ 4(a)-(b).) The WCJ credited the testimony of Dr. Fenichel, stating she evaluated Claimant three times and her opinions were well reasoned, logical, and supported by the evaluations. (*Id.* ¶ 5.) The WCJ rejected Dr. Weiss's testimony to the extent it contradicted Dr. Fenichel's, citing, in part, Dr. Weiss's changing diagnoses between evaluations. (*Id.* ¶ 6(a).) The WCJ further explained that Dr. Weiss's opinions were not well reasoned or logical, were largely based on symptoms reported by Claimant, whom the WCJ did not credit, and were inconsistent with Dr. Fenichel's. (*Id.* ¶ 6(b)-(d).) Based on the above findings, the

---

[7] There are two paragraphs designated as 3(j), (k), and (l) in the WCJ's Decision. These refer to the second.

WCJ concluded Employer sustained its burden of showing Claimant fully recovered from the psychological work-related injury as of January 10, 2020, and granted the Termination Petition. (WCJ's Decision, Conclusion of Law ¶ 2, Order.)

Claimant appealed to the Board. (R.R. at 9a-17a.) Before the Board, Claimant argued the WCJ erred because Employer engaged in ex parte communications with Claimant by scheduling the examination with Dr. Fenichel without the knowledge of Claimant's counsel. The Board concluded Claimant's reliance on *Pennsylvania State University v. Workers' Compensation Appeal Board (Sox)*, 83 A.3d 1081 (Pa. Cmwlth. 2013), was misplaced as it involved the interplay of attorney-client privilege between counsel for an employer and physicians employed by the employer/client and doctor-patient privilege between the same physicians and their patient, who was also the claimant. (Board Opinion (Op.) at 2.) Rather, the Board concluded this situation involved a violation of the Rules of Professional Conduct. (Board Op. at 2-3.) The Board explained that here, Dr. Fenichel performed three independent examinations of Claimant. (*Id.* at 2.) It continued:

> While we certainly do not condone [Employer]'s actions of contacting Claimant without the benefit of his counsel's foreknowledge, we do not believe that this situation rises to the level that a remand is required given the multiple examinations. Purportedly, Claimant had the benefit of his counsel's advice in two of the three examinations.

(*Id.*) Citing *Keppol v. Workers' Compensation Appeal Board (Acme Markets, Inc.)* (Pa. Cmwlth., No. 996 C.D. 2011, filed February 10, 2012),[8] the Board stated a remand was not warranted as the conduct was "not relevant to the issues before the WCJ and on appeal." (Board Op. at 3.)

---

[8] Unreported panel decisions of this Court may be cited for their persuasive value pursuant to Rule 126(b) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P 126(b), and Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

8

The Board also rejected Claimant's argument that the WCJ erred in concluding Employer met its burden of proof on the Termination Petition. Recapping the evidence presented and based upon the credibility determinations of the WCJ, by which the Board was bound, the Board determined there was substantial evidence to support the WCJ's findings that Employer satisfied its burden. (*Id.* at 7-8.)

Claimant timely petitioned this Court for review of the Board's Order.[9]

## II.    PARTIES' ARGUMENTS

Claimant argues that while Section 314 of the Act, 77 P.S. § 651,[10] permits an employer to request a claimant to undergo a physical examination and for the examination to occur outside of the presence of claimant's counsel, advance notice must still be provided to counsel so that a claimant can be advised of their rights. Claimant points to Section 131.11 of the Special Rules of Administrative Practice and Procedure before WCJs (Special Rules), 34 Pa. Code § 131.11, and Section 31.26 of the General Rules of Administrative Practice and Procedure (GRAPP), 1 Pa. Code § 31.26, as requiring notice be served on counsel. Claimant asserts this Court has also required an employer to show notice was provided before a WCJ may order the claimant to attend an IME. (Claimant's Brief (Br.) at 11 (citing *Cataldi v. Workers' Comp. Appeal Bd. (Lane Co., Inc.)*, 738 A.2d 1074 (Pa. Cmwlth. 1999), and *Maranc v. Workmen's Comp. Appeal Bd. (Bienenfeld)*, 628 A.2d 522 (Pa. Cmwlth. 1993)).) Claimant asserts the Board's reliance on the Rules of Professional

---

[9] Our review is limited to determining whether constitutional rights were violated, whether errors of law were committed, or whether necessary findings of fact are supported by substantial evidence. *Universal Am-Can, Ltd. v. Workers' Comp. Appeal Bd. (Minteer)*, 762 A.2d 328, 331 n.2 (Pa. 2000).

[10] Act of June 2, 1915, P.L. 736, *as amended*.

9

Conduct is misplaced because it was not Employer's counsel but Employer, via an agent, who communicated directly with Claimant. Comparing this situation to spoliation of evidence, Claimant contends that the appropriate sanction is to bar use of the IME. In so contending, Claimant argues fault lies entirely with Employer and its agent, Claimant was prejudiced as a result because his benefits were terminated, and there are no lesser sanctions available. Moreover, Claimant argues that allowing Employer to utilize the IME sets a bad example from which other employers, insurers, and IME agencies will follow. Accordingly, Claimant requests that this Court reverse the Board's Order and bar the use of Dr. Fenichel's report and testimony.

In a footnote, Claimant alternatively asserts Dr. Fenichel's opinion is legally insufficient because her opinions are inconsistent. Specifically, Claimant argues Dr. Fenichel opined Claimant was fully recovered as of March 7, 2019, but "'continued' to agree" with Dr. Watson's opinion that Claimant suffered from adjustment disorder with mixed anxiety and depressed mood as of February 10, 2020. (Claimant's Br. at 9 n.1.)

Arguing that an issue is waived unless it is preserved at every stage of the litigation, Employer responds Claimant waived his argument about counsel not receiving notice of the examination because he did not properly raise and preserve his arguments throughout the litigation. (Employer's Br. at 19 (citing *Wheeler v. Workers' Comp. Appeal Bd. (Reading Hosp. & Med. Ctr.)*, 829 A.2d 730, 735 (Pa. Cmwlth. 2003)).) While Claimant objected to the use of Dr. Fenichel's report at the May 14, 2020 hearing, Employer argues that is all Claimant did. According to Employer, Claimant did not present any evidence that the examination was improper or the result of ex parte communications, never raised or preserved the objection at

Dr. Fenichel's deposition; never objected to the admission of Dr. Fenichel's deposition, and never argued or preserved his objection in his post-hearing submission to the WCJ. Employer agrees with Claimant that the Board's reliance on the Rules of Professional Conduct is misplaced because it was a third-party vendor that sent the letter directly to Claimant and not his attorney. Because Claimant had notice of the examination and actively participated, Employer argues the Board's Order should be affirmed.

In response to Claimant's second argument, Employer argues the WCJ's findings that Claimant is fully recovered from the psychological injuries are supported by substantial evidence and this Court cannot overturn the WCJ's credibility determinations.

## III. DISCUSSION

### A. Notice to WC Counsel

We first address Claimant's argument that any evidence from Dr. Fenichel's IME should be excluded from evidence because Claimant's WC counsel was not given notice of the scheduled IME since, without this evidence, Employer cannot meet its burden of proof on the Termination Petition. Employer argues Claimant waived this issue by failing to raise it throughout the litigation before the WCJ.

In *Wheeler*, we explained:

> It is well established that an issue is waived unless it is preserved at every stage of the proceeding. . . . The strict doctrine of waiver applies to a [WC] proceeding. . . . The purpose of the waiver doctrine is to ensure that the WCJ is presented with all cognizable issues so that the integrity, efficiency, and orderly administration of the [WC] scheme of redress for work-related injury is preserved.

11

829 A.2d at 734 (internal citations and quotations omitted). There, we held that a claimant who voluntarily attended a vocational interview without objecting that the vocational expert was not approved by the Department of Labor and Industry to conduct such interviews did not preserve the issue and the fact that the claimant was proceeding pro se did not excuse his failure to object. *Id.*

While our caselaw requires an issue to be raised at "every **stage** of the proceeding" in order to be preserved, *id.* (emphasis added), Employer would have us interpret this as requiring a party raise an objection at every **opportunity** in order to preserve it. Employer acknowledges Claimant objected at the May 14, 2020 hearing, but asserts Claimant also had to object again at Dr. Fenichel's deposition, at the December 20, 2020 hearing when Dr. Fenichel's deposition was admitted into evidence, and in post-hearing submissions. (Employer's Br. at 20-21.)

Although Employer cites no support for this proposition, we note that Section 131.66(b) of the Special Rules provides, at least in relation to depositions, that

> [o]bjections shall be made and the basis for the objections stated at the time of the taking of the depositions. Only objections which are identified in a separate writing, introduced prior to the close of the evidentiary record, as close of the record is specified in [Section] 131.101(c)-(e) (relating to briefs, findings of fact and close of record), and stating the specific nature of the objections and the pages where they appear in the deposition or the exhibits to which they refer will be preserved for ruling. Objections not so preserved are waived.

34 Pa. Code § 131.66(b). On a number of occasions, this Court has found that noncompliance with either or both requirements in Section 131.66(b) resulted in waiver of an issue. *See, e.g.*, *Costello v. Workers' Comp. Appeal Bd. (City of Phila.)* (Pa. Cmwlth., No. 1230 C.D. 2014, filed April 21, 2015), slip op. at 21 (failure to object to the timeliness of an examination at the time of the expert's deposition);

*Privette-James v. Workers' Comp. Appeal Bd. (Univ. of Pa.)* (Pa. Cmwlth., No. 1906 C.D. 2013, filed June 5, 2014), slip op. at 37-38 (failure to object to the spoliation of evidence at the IME physician's deposition); *Alessandro v. Workers' Comp. Appeal Bd. (Precision Metal Crafters, LLC)*, 972 A.2d 1245, 1252 (Pa. Cmwlth. 2009) (objecting at deposition but not preserving that objection in writing as required); *Degraw v. Workers' Comp. Appeal Bd. (Redner's Warehouse Mkts., Inc.)*, 926 A.2d 997, 1001 (Pa. Cmwlth. 2007) ("[E]ven if [the c]laimant's counsel objected on the basis of lack of foundation when [the physician] was being questioned on the nature of [the c]laimant's injuries, those objections would be waived" as there was no evidence of record that they were preserved in writing.).

However, there is no indication the objecting party in those cases raised the very same objection at a hearing before the WCJ, prior to the deposition, and that the WCJ overruled that objection. That is what occurred here. At the May 14, 2020 hearing, upon Employer moving for admission of Dr. Fenichel's IME report, Claimant objected to any and all evidence originating from Dr. Fenichel's third IME of Claimant on the basis that Claimant's WC counsel was not provided notice of the IME. (R.R. at 98a-103a.) After some back and forth between Claimant's WC counsel and the WCJ, the WCJ essentially overruled the objection, stating Claimant's counsel would be provided ample time to consult with his client, prepare for Dr. Fenichel's deposition, and have Dr. Weiss review and respond to Dr. Fenichel's report and testimony. (*Id.* at 108a-11a.)

Because Claimant already objected to any evidence from Dr. Fenichel, there was nothing to be gained from objecting again since the WCJ already essentially overruled the same objection at the hearing. The purpose of preserving objections is to enable the WCJ to address "all cognizable issues so that the 'integrity,

13

efficiency, and orderly administration of the [WC] scheme of redress for [the] work-related injury' is preserved." *Wheeler*, 829 A.2d at 734. That purpose is fulfilled under the factual scenario presented here. Requiring Claimant to restate the same exact objection upon which the WCJ already ruled at (1) Dr. Fenichel's deposition; (2) the December 20, 2020 hearing at which Dr. Fenichel's deposition was admitted into evidence; and (3) in Claimant's post-hearing submissions does nothing to further this purpose.[11]

Having concluded Claimant did not waive the issue, we turn to its merits. Claimant maintains that administrative regulations require service also be made upon a party's counsel. For support, Claimant cites both Section 31.26 of GRAPP and Section 131.11(c) of the Special Rules.

Section 31.26 of GRAPP, provides:

> In a proceeding where an attorney has filed a submittal on behalf of a client or has filed an appearance under [Section] 31.24(b) (relating to notice of appearance), a notice or other written communication required to be served upon or furnished to the client shall also be served upon or furnished to the attorney (or one of the attorneys if the client is represented by more than one attorney) in the same manner as prescribed for his client, notwithstanding the fact that the communication may be furnished directly to the client.

1 Pa. Code § 31.26. However, the Special Rules supersede GRAPP. Section 111.2 of the Special Rules, 34 Pa. Code § 111.2. *See also Stech v. Workmen's Comp. Appeal Bd. (MJS Equip. Co.)*, 678 A.2d 1243, 1244 (Pa. Cmwlth. 1996) ("[The

---

[11] Moreover, rather than at every opportunity, as Employer posits, it appears the reference to "every stage" in *Wheeler* means that the issue must be raised before the **WCJ** and the **Board** in order for it to be preserved for appellate review. *See, e.g.*, *Privette-James*, slip op. at 14-15 (concluding the claimant's argument was waived for not raising it to the Board); *GMS Mine Repair & Maint., Inc. v. Workers' Comp. Appeal Bd. (Way)*, 29 A.3d 1193, 1197 (Pa. Cmwlth. 2011) (concluding the employer's argument was waived for not raising it before the Board).

employer] properly notes that WCJ proceedings are governed by the Special Rules . . . , which supersede [GRAPP].")  Therefore, Section 31.26 of GRAPP is inapplicable.

Section 131.11(c) of the Special Rules provides that "[a]ny notice or other written communication required to be served upon or furnished to a party shall also be served upon or furnished to the party's attorney in the same manner as it is served upon the party."  34 Pa. Code § 131.11(c).  While it applies to WC matters, as the parties noted, there are no reported appellate cases directly on point.  However, there are cases that help shed light on the consequences of noncompliance with Section 131.11(c).

First, it is important to understand the role, if any, counsel plays in an IME. The Court first examined this issue in *Maranc v. Workmen's Compensation Appeal Board (Bienenfeld)*, 628 A.2d 522, 524 (Pa. Cmwlth. 1993).  There, a claimant refused to attend an IME without having his counsel present.  The claimant asserted he had a constitutional right to have counsel present during the IME.  We rejected that argument, reasoning that a referee, now called a WCJ, is the factfinder and, as such, can accept or reject the IME physician's testimony.  *Id.* at 525.  Further, the Court reasoned that

> counsel can adequately protect [the claimant's] interest by deposing [the IME physician] regarding his conclusions.  [] [C]ounsel has the right to cross-examine [the IME physician] during any hearing or deposition in order to challenge his findings, should they be contrary to [the claimant].  [The claimant] is also entitled to produce his own physician to rebut any conclusions formulated by [the IME physician].

*Id.*  Thus, there are safeguards in place.

Second, albeit in a different context, we required a claimant to demonstrate actual prejudice or adverse impact when the claimant's counsel did not receive a

15

copy of a notice of ability to return to work. *Hale v. Workers' Comp. Appeal Bd. (Fleming Cos.)* (Pa. Cmwlth., No. 1803 C.D. 2011, filed June 4, 2012), slip op. at 27.

Here, the WCJ postponed proceedings for several months to allow Claimant's WC counsel ample time to confer with his client. Claimant's WC counsel also had the opportunity to participate in Dr. Fenichel's subsequently scheduled deposition and cross-examine her to challenge Dr. Fenichel's findings from the IME. In addition, the WCJ provided Claimant time to have Dr. Weiss review Dr. Fenichel's report and deposition and provide his own report and testimony. In other words, Claimant received all of the safeguards under *Maranc* and did not establish any actual prejudice or adverse impact from the lack of notice to Claimant's WC counsel under *Hale*, particularly given this was Claimant's third IME with Dr. Fenichel.

Under these circumstances, the Court cannot conclude the WCJ committed an error of law or abused her discretion in allowing the litigation of the Termination Petition to proceed as it did.

### B. Termination Petition

Alternatively, Claimant asserts Dr. Fenichel's opinions were equivocal and, thus, insufficient to carry Employer's burden of proof on the Termination Petition.[12]

---

[12] We note that Claimant's argument on this issue does not conform to Rule 2119(a) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 2119(a), as it does not contain caselaw, relevant legal authority, or meaningfully discuss precedent. Instead, the entirety of Claimant's argument is contained in a footnote in the Summary of Argument section of Claimant's Brief. Although there are shortcomings in Claimant's brief, Employer was able to address Claimant's argument, and we will also address the merits of this issue. *See Richardson v. Pa. Ins. Dep't*, 54 A.3d 420, 426 (Pa. Cmwlth. 2012) (providing that we may review the cognizable arguments we can glean from an appellate brief, despite a noncompliance with the Pennsylvania Rules of Appellate Procedure, even if those violations are "egregious," if they do not preclude meaningful appellate review).

16

To obtain a termination of benefits, an employer bears the burden to prove "that the claimant fully recovered from his work injury and has no remaining disability, or that any remaining disability is no longer related to the work injury."[13] *Ingrassia v. Workers' Comp. Appeal Bd. (Universal Health Servs., Inc.)*, 126 A.3d 394, 402 n.13 (Pa. Cmwlth. 2015). An employer meets this burden when its medical expert unequivocally testifies that "it is [the expert's] opinion, within a reasonable degree of medical certainty, that the claimant is fully recovered, can return to work without restrictions and that there are no objective medical findings which either substantiate the claims of pain or connect them to the work injury." *Udvari v. Workmen's Comp. Appeal Bd. (USAir, Inc.)*, 705 A.2d 1290, 1293 (Pa. 1997).

Medical testimony is "equivocal if it is based only upon possibilities, is vague, and leaves doubt." *Amandeo v. Workers' Comp. Appeal Bd. (Conagra Foods)*, 37 A.3d 72, 80 (Pa. Cmwlth. 2012) (quotation omitted). The medical expert's testimony must be reviewed "as a whole[,] and [we] may not base our analysis on a few words taken out of context." *Id.* Furthermore, "[t]here are no magic words that a doctor must recite to establish causation." *Campbell v. Workers' Comp. Appeal Bd. (Pittsburgh Post Gazette)*, 954 A.2d 726, 730 (Pa. Cmwlth. 2008). "There is no requirement that every utterance that escapes the lips of a medical witness . . . must be certain, positive, and without reservation, exception, or paradventure of a doubt in order to be considered unequivocal." *Id.* "[I]f a medical expert testifie[d], after providing a foundation for the testimony, that, in [the expert's] professional opinion, [the expert] believes or thinks a fact exists," the testimony is unequivocal. *O'Neill v. Workers' Comp. Appeal Bd. (News Corp., Ltd.)*, 29 A.3d 50, 57 (Pa. Cmwlth. 2011). The "mere offering of alternative analyses with respect to a work-related

---

[13] Employer here only proceeded with the Termination Petition with regard to Claimant's psychological injuries, not his physical ones.

injury does not render the expert's testimony equivocal." *Manitowoc Co., Inc. v. Workers' Comp. Appeal Bd. (Cowan)*, 74 A.3d 1137,1142 (Pa. Cmwlth. 2013). Nor is an expert required to "rule out with absolute certainty other factors that may have caused or contributed to a condition." *Campbell*, 954 A.2d at 730.

Claimant asserts Dr. Fenichel's opinion was equivocal because her opinions were inconsistent, opining on the one hand that Claimant had fully recovered as of March 7, 2019, but opining on the other hand that, as of February 2020, Dr. Fenichel "'continued' to agree" with Dr. Watson's opinion that Claimant still suffered from adjustment disorder with mixed anxiety and depressed mood. (Claimant's Br. at 9 n.1.)

Preliminarily, it is unclear where Dr. Fenichel allegedly deemed Claimant fully recovered as of March 7, 2019, which predated the filing of the Termination Petition. Claimant does not provide a citation for this assertion, and the Court's review of the record only shows March 7, 2019, as being a date for which Claimant had last seen Dr. Watson before resuming treatment after the IME in 2020, (R.R. at 142a), and as the date of Employer's filing of a separate petition to modify, (*id.* at 89a).

A review of Dr. Fenichel's February 10, 2020 IME report does show where Dr. Fenichel states she "continue[s] to agree with the diagnosis as noted by Dr. Watson of an adjustment disorder with mixed anxiety and depressed mood," as Claimant points out.[14] (Certified Record Item 26 at 8.) At her deposition, though, Dr. Fenichel repeatedly testified that she felt Claimant was fully recovered from a

---

[14] Claimant cites page 351a of the Reproduced Record for support that Dr. Fenichel agreed with Dr. Watson's diagnoses of adjustment disorder with mixed anxiety and depressed mood. (Claimant's Br. at 9 n.1.) However, the Reproduced Record filed by Claimant skips from page 331a to 352a. It appears Claimant is referring to a statement on page 8 of Dr. Fenichel's February 10, 2020 report, which is in the Certified Record at Item 26.

psychological standpoint. (R.R. at 278a.) She explained the basis for this opinion as follows:

> This opinion was based on the opportunity to meet with [Claimant] three times, the opportunity to review records that were over the course of a number of years -- the first time again was in January [2018] when I first met [Claimant] -- the fact that [Claimant]'s main problems were not in any way related to what happened to him in his work injury but what he described for himself as a problem getting his own motivation going, the fact was that in my opinion [Claimant] was recovered from the adjustment disorder that was diagnosed by Dr. Watson, and the fact is that [Claimant] was provided with lots of opportunities to engage in psychological treatment and lots of opportunities to pursue other types of work, lots of opportunities even to go back to [Employer] and it was not any type of psychiatric disorder that prevented him from doing so.

(*Id.* at 279a.) Dr. Fenichel's review of Dr. Watson's records also, in her opinion, supported her "ultimate conclusion" that Claimant did not need any additional psychological treatment for his work injury. (*Id.* at 286a, 288a.) Upon review of Claimant's updated medical records, Dr. Fenichel testified that her opinion remained, within a reasonable degree of medical certainty, that Claimant was fully recovered from a psychological standpoint as of the date of her IME on February 10, 2020. (*Id.* at 291a.)

Taken as a whole, Dr. Fenichel testified unequivocally that Claimant is fully recovered from the accepted psychological work injuries and explained why she felt this way. *Amandeo*, 37 A.3d at 80. The WCJ, as fact finder, was then free to review that testimony and make determinations as to weight and credibility. *Miller v. Workers' Comp. Appeal Bd. (Millard Refrigerated Servs. and Sentry Claims Serv.)*, 47 A.3d 206, 209 (Pa. Cmwlth. 2012). "A WCJ may accept or reject the testimony of any witness in whole or in part." *Id.* Here, the WCJ credited the testimony of Dr. Fenichel over the testimony of Dr. Weiss and Claimant. "[T]he appellate role is not

19

to reweigh the evidence or to review the credibility of the witnesses." *Bethenergy Mines, Inc. v. Workmen's Comp. Appeal Bd. (Skirpan)*, 612 A.2d 434, 437 (Pa. 1992). As Dr. Fenichel's testimony was sufficient to carry Employer's burden on the Termination Petition, we discern no error. Accordingly, we affirm.

**RENÉE COHN JUBELIRER,** President Judge

20

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

George B. Thomas,          :
             Petitioner     :
                            :
        v.               :    No. 899 C.D. 2022
                            :
Sysco Foods (Workers'        :
Compensation Appeal Board),    :
             Respondent    :

## O R D E R

**NOW**, April 26, 2024, the Order of the Workers' Compensation Appeal Board, dated July 21, 2022, is **AFFIRMED**.

 

**RENÉE COHN JUBELIRER,** President Judge